IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cosmetic Alchemy, LLC,<br><br>     Plaintiff,<br><br>vs.<br><br>Loving Lotus,<br><br>     Defendant. | No. CV10-1045-PHX-SRB<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT JUDGE:

**BACKGROUND**

Plaintiff filed a Complaint on May 13, 2010. (Doc. 1). After Defendant failed to answer, Plaintiff submitted an Application for Entry of Default on August 5, 2010. (Doc. 8). The Clerk of Court entered default the following day. (Doc. 9). On September 2, 2010, Plaintiff filed a Motion for Entry of Default Judgment. (Doc. 10). The matter was then referred to this court to hold a hearing on damages and for issuance of a Report and Recommendation. (Doc. 12). This court held a hearing on October 27, 2010, during which, the court directed Plaintiff to file within 30 days thereafter a post evidentiary hearing memorandum regarding the calculation of damages presented at the hearing. Additionally, the court directed Plaintiff to provide legal authority in the memorandum to support its theory

of damages. (Doc. 17). Plaintiff argued at the hearing that it is entitled to recover as damages the profits Defendant earned from the products it sold via the Internet in breach of the contract with Plaintiff. On November 24, 2010, Plaintiff filed a Post-Hearing Brief Regarding Plaintiff's Damages Calculation. (Doc. 20).

**DISCUSSION**

Plaintiff's evidence at the damages hearing established that it entered a "Reseller Agreement" with Defendant in August 2009. (Doc. 19 at 11-12). The contract authorized Defendant to resell at designated retail locations the products identified as LiLash and LiBrow. (Id.). The contract, however, prohibited Defendant from selling the products anywhere on the Internet. (Doc. 19 at 12). The evidence showed that Plaintiff sold the products to Defendant for $69.99 per unit. (Doc. 19 at 13-14). The suggested retail price in the contract for Defendant to resell the products was $139.97 per unit. (Doc. 19 at 13). Plaintiff's evidence further established that Defendant breached the contract by selling the products over the Internet. (Doc. 19 at 16-18). Defendant sold the products over the Internet for prices ranging from $99.99 to $106.99 per unit. (Doc. 19 at 18-19). Plaintiff terminated the contract after Defendant refused to stop selling the products on the Internet. (Doc. 19 at 16). Plaintiff has not alleged that Defendant failed to pay for any of the products it purchased from Plaintiff. (Id.).

Plaintiff argued at the hearing that it is entitled to damages in the amount of the profits Defendant received from its Internet sales of the products. Through the use of invoices, Plaintiff determined the number of units it sold to Defendant and the price Defendant paid for each unit. (Doc. 20 at 2-3).[1] Plaintiff then assumed, for purposes of calculating damages, that Defendant sold all of these units on the Internet. (Doc. 20 at 3-4). Plaintiff further assumed that all the units were sold on the Internet for prices ranging from $99.99 per unit

---

[1] Plaintiff also presented evidence at the hearing that even after it stopped selling the product to Defendant following the breach, it believes Defendant obtained the product from other sources and continued selling it on the Internet. (Doc. 19 at 20, 23-24). Plaintiff, however, is not seeking damages for those "post-termination" sales. (Doc. 19 at 32).

- 2 -

1 to $106.99 per unit. (Id.). Plaintiff based these assumptions on Ebay listings it obtained
2 showing Defendant was offering the products for sale. (Id.). Plaintiff then calculated the
3 gross revenue Defendant generated by multiplying the number of units it sold to Defendant
4 by $103.99 per unit, which Plaintiff contends is the average sale price of the units sold by
5 Defendant on the Internet. (Doc. 20 at 3). From that gross revenue figure of $223,020.95,
6 Plaintiff subtracted the amount Defendant paid for the products, which was $144,030.42, to
7 arrive at a figure of $78,981.53. (Id.) Plaintiff contends this represents Defendant's profits
8 from the improper sales of the products on the Internet, and, consequently, the damages
9 Plaintiff is entitled to receive given Defendant's default.

10 **1.     Damages Based on Defendant's Profits**

11     In its post-hearing brief, Plaintiff cites three cases to support its argument that
12 Defendant's profits from the unauthorized Internet sales are the appropriate measure of
13 Plaintiff's damages in this action. The cases, however, are inapplicable. In K.W. Plastics
14 v. U.S. Can Co., 131 F.Supp.2d 1265 (D. Ala. 2001), the issue was how to determine the
15 non-breaching party's lost profits, which, the court noted, can be highly speculative. The
16 court explained that "[u]nder Alabama law, a plaintiff seeking damages must provide
17 sufficient evidence for the jury to estimate lost profits with reasonable certainty." Id. at
18 1268. The court identified several types of evidence a plaintiff could present to prove lost
19 profits, including "the defendant's subsequent profit from enjoyment of a comparable
20 opportunity." Id. at 1268. The court did not hold, as Plaintiff suggests, that a defendant's
21 profits are a proper measure of a plaintiff's compensatory damages in a breach of contract
22 case. It merely recognized that a defendant's profits may be used to estimate a plaintiff's lost
23 profits where the plaintiff is seeking lost profits.

24     The same was true in N. Pac. Lumber Co. v. Moore, 275 Or. 359, 366-67, 551 P.2d
25 431, 435-36 (Or. 1976), where the court found that the defendants, in breach of a contract,
26 made sales to the plaintiff's former customers which otherwise would have been made by the
27 plaintiff, thereby resulting in a loss of profits. The court ruled, therefore, that the defendants'
28 profits from those sales were a reasonable way to measure the plaintiff's lost profits. Id.

1    In the third case, <u>Wirum & Cash, Architects v. Cash</u>, 837 P.2d 692, 711 (Alaska 1992), the court agreed that a court can consider the profit of the breaching party. In doing so, however, it relied on a case "which held that the defendant's profit may be considered in evidence if shown to correspond in whole or in part to plaintiff's loss for impairment of goodwill." <u>Id.</u> Thus, the court seemed to permit the use of defendant's profit as evidence of the plaintiff's loss of goodwill from the breach of a non-compete clause, not as a stand alone measure of compensatory damages. <u>See</u> <u>id.</u>

Here, Plaintiff is not claiming lost profits as a result of Defendant's breach. Plaintiff concedes that it was fully paid for the products it sold to Defendant. Nor is Plaintiff attempting to use Defendant's profits to estimate some other loss, such as loss of goodwill, it suffered as a result of the breach. Rather, Plaintiff is claiming that it is entitled to Defendant's profits as its compensatory damages for the breach. The cases cited by Plaintiff do not support such a claim and the court's own research has revealed no cases that support calculating damages in this way.

Finally, Plaintiff cites two Lanham Act cases, to which it claims this case is analogous, to support its argument for measuring damages. (Doc. 20 at 5). The Lanham Act, however, contains an express statutory provision that authorizes a plaintiff to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action" for a violation of rights protected by the Act. 15 U.S.C. § 1117(a).

Here, the case is a standard breach of contract action to which that statutory provision does not apply. Plaintiff has presented no authority in which this provision has been applied to recovery in a breach of contract action.

Based on the above analysis, the court finds that Plaintiff has not demonstrated it is entitled to recover Defendant's profits as compensatory damages in this action. Plaintiff has presented no other claim for damages in the evidentiary hearing or the post-hearing brief.

**2.    Speculative Nature of Plaintiff's Alleged Damages**

Even if the court agreed with Plaintiff that Defendant's profits from the Internet sales were recoverable as compensatory damages, the court would not accept the figures provided

- 4 -

by Plaintiff. Plaintiff provided little evidence to support its assumption that Defendant sold all 2155 units on the Internet. Plaintiff's representative at the evidentiary hearing, when asked if he knew whether Defendant was selling the product other than on the Internet, responded:

> I wouldn't have any direct knowledge of that. Based on the numbers that we've seen, we assume that the vast majority of product that he purchased from us was sold on the Internet, if he even had an existing retail location.

(Doc. 19 at 23). In addition, Plaintiff's representative conceded that the estimated revenue Defendant received from Internet sales was a "very gross approximation." (Doc. 19 at 20). Plaintiff's only evidence of Defendant's Internet sales is two listings from the Ebay website. (Evidentiary Hearing Exh. 5). Assuming all the information on those listings is accurate, the listings show a total of 99 units sold by Defendant. (Id.). Plaintiff's representative testified that there have been many more such listings by Defendant but he failed to offer anything specific. (Doc. 19 at 30). From this very limited information, Plaintiff wants the court to assume that all 2155 units were sold on the Internet and that none were sold in accordance with the terms of the contract. The court is unwilling to take such a leap.

Similarly, the price at which Defendants purportedly sold the units on the Internet is speculative. Although the Ebay listings show a price of $106.99 for a single unit and $204.99 for a two unit package, those listings reflect the sale of, at most, 99 units. Plaintiff simply uses a figure in the middle of that range and applies that per unit figure to all 2155 units to arrive at a gross revenue amount for Defendant. Even if Defendant did sell all 2155 units on the Internet, using the average price for a mere 99 of those units is not an adequate basis to determine the price at which the other 2056 units sold.

The court therefore finds that even if it did accept Plaintiff's argument that it is entitled to receive Defendant's profits as its damages, the figures it uses to estimate Defendant's profits are simply too speculative. The court is unwilling to accept Plaintiff's assumptions to calculate the damages.

For the foregoing reasons, the court will recommend that Plaintiff's calculation of damages in support of its request for a default judgment be rejected. Because Plaintiff has

presented no other basis for, or calculation of, damages, the court has no basis to recommend an alternative damages award.

**IT IS THEREFORE RECOMMENDED:**

That Plaintiff's request for compensatory damages in the amount of $78,981.53 be **DENIED**.

DATED this 9th day of December, 2010.

*Edward C. Voss*
Edward C. Voss
United States Magistrate Judge